IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RAYL LYNN KELLAR,

       Plaintiff,

v.                                     CASE NO. 4:14-cv-84-RH-GRJ

FLORIDA DEPARTMENT
OF CORRECTIONS, et al,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       Pending before the Court are three motions: (1) Defendants Florida Department of Corrections, Florida Correctional Medical Authority, and R. Wolf's Motion to Dismiss, Doc. 16; (2) Defendant West's Motion to Dismiss, Doc. 34; and (3) Defendant Carrero's Motion to Dismiss, Doc. 51.  Plaintiff has responded to the motions and, therefore, the motions are ripe for review.  Docs. 20, 38, 52.  After careful consideration of the motions and the responses, the Court concludes that the motions to dismiss are due to be granted in part and denied in part, as explained below.

## I.  PLAINTIFF'S ALLEGATIONS

       Plaintiff filed his complaint in state court, and the case was removed to this Court on February 21, 2014.  Doc. 1.  Plaintiff named six Defendants in this action: the Department of Corrections (DOC), the Correctional Medical Authority (CMA), Assistant Warden C. L. West, Senior Health Services Administrator R. Wolf, Dr. J. Gonzalez, and Dr. L. Carrero.  Doc. 3-1.  Dr. Gonzalez was voluntarily dismissed from this action.  Doc.

49.

Plaintiff alleges he injured his right ankle and knee in 2007 at Columbia CI. Although he was given ambulatory assistance and pain medication, he was not given an x-ray until "3-4 days later," and the x-ray was only of his right ankle, and not for his right knee.

Plaintiff was transferred to Cross City CI in 2007, and went to sick call on various occasions complaining of right knee pain.  In 2009, Defendant Gonzalez "refused" to order x-rays even though Plaintiff told him that his knee has given out, and instead performed only a visual inspection.  During 2009-2010, Plaintiff visited sick call because his pain was severe, and he was provided only with a stretch bandage.

Defendant Carerro replaced Dr. Gonzalez in 2010. After review of Plaintiff's medical record, x-rays were ordered.  The x-rays did not show any injury and, therefore, to better determine if there were any injuries an MRI was ordered.  The MRI was performed in April of 2010, and revealed massive muscular tearing.  Dr. Carlos Esquivia recommended that Plaintiff needed surgery urgently.

The following month, Plaintiff's mother made an appointment for a lawyer to see Plaintiff at Cross City CI.  The attorney only agreed to visit Plaintiff after Plaintiff paid a $500 non-refundable fee.  On the day prior to his attorney's visit, Plaintiff was transferred to Lake Butler RMC for surgery.  Because Plaintiff already had his lawyer's visit scheduled, Plaintiff signed a medical refusal form declining surgery so that he could be returned to Cross City CI to meet with his lawyer.

By August of 2010, Plaintiff's surgery still had not been rescheduled, so he

returned to sick call.  There, a nurse told Plaintiff that Defendant Carerro was upset that

Plaintiff had refused surgery, and now Plaintiff would need to return to sick call for three

visits before he would be rescheduled.  Plaintiff returned to sick call on three occasions,

but did not receive any pain prescriptions.  Plaintiff filed a medical grievance on October

13, 2010, complaining that he had not had his surgery rescheduled and did not receive

any pain medication at sick call.  Defendant West responded to the grievance on

November 2, 2010, stating that Plaintiff was receiving proper medical care.  Plaintiff

alleges that Defendant West was required to forward the grievance to the chief medical

officer for review, but instead used his position to interfere with the grievance process.

On December 16, 2010, Plaintiff was sent for surgery, but it was postponed

because a physician at Lake Butler RMC said that Plaintiff could not have surgery there

due to his latex allergy.  Plaintiff alleges that no testing was done to determine any

allergy, and the only testing performed was an EKG and chest x-ray.  Plaintiff was

transferred to the West Unit at Lake Butler so that surgery could be performed at

Jacksonville Memorial Hospital. However, on January 25, 2011, Plaintiff was transferred

to Cross City CI without the surgery being performed.

Plaintiff alleges that he had no knowledge of a latex allergy, and a nurse at Cross

City CI told him that there was no allergy.  Plaintiff filed another grievance because he

had not received surgery, and Defendants Wolf, Carrero, and West responded that

Plainitff had been receiving appropriate medical care, and his surgery was being

rescheduled due to his latex allergy.

In March of 2011, Plaintiff was informed by a nurse at Cross City CI that the

physician at Lake Butler said Plaintiff had a latex allergy "probably" because they didn't want to do the surgery there, and that she used to work at Lake Butler and saw it all the time.

Plaintiff does not state whether, or when, he eventually received the surgery. Plaintiff asserts claims for deliberate indifference, conspiracy, negligence, and the denial of due process.  Plaintiff sues each Defendant in their official and individual capacities, "except where prohibited by law," and seeks general and special damages of $300,000 from Defendants FDOC and CMA, and $50,00 against each named Defendant in the conspiracy, as well as his costs in litigating this action.

## II.  STANDARD OF REVIEW

 For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief.  In determining whether factual allegations are entitled to the presumption of

truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Iqbal*, 129 S.Ct. at 1951. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

Further, "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[1]

## III.  DISCUSSION

**A.  Defendants Florida Department of Corrections, Florida Correctional Medical Authority, and R. Wolf's Motion to Dismiss, Doc. 36**

The Court will first address the claims raised in Defendants Florida Department of Corrections, Florida Correctional Medical Authority, and R. Wolf's Motion to Dismiss, Doc. 36.  Where applicable the Court will consolidate those arguments that also apply to Defendants West and Carrero, before moving on to the discussion of Defendant West's Motion to Dismiss and Defendant Carrero's Motion to Dismiss.

### 1.  § 1983 Claims Against the DOC and CMA

In Counts Five and Six, Plaintiff alleges that Defendants the DOC and CMA violated his rights under the Eighth and Fourteenth Amendments.  Doc. 3-1 at 15.

---

[1]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

Defendants argue that Plaintiff's § 1983 claims against the DOC and CMA should be dismissed because these defendants are agencies, not "people" who can be liable under § 1983.  Doc. 16 at 8.

In his response to the motion to dismiss, Plaintiff argues that the DOC and CMA are sued under a theory of *respondeat superior*.  Doc. 2 at 3-4.  Plaintiff also asserts in his complaint that the DOC and CMA are sued "in its official capacity regarding policy only under respondeat superior."  Doc. 3-1 at 7.  Construing Plaintiff's claims generously, he appears to be asserting a claim under *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978).  In *Monell*, 436 U.S. 658 (1978), the Supreme Court held that governmental entities cannot be held liable under a theory of vicarious liability or *respondeat superior*.  The only theory under which a governmental entity can be held liable under section 1983 is when the unlawful conduct, which caused the injuries, constitutes an official policy or custom of the governmental entity.  Therefore, there is no liability simply because the agency employs officers who may have committed constitutional violations.  Liability can only be found when the unlawful activity constitutes a policy or custom, as dictated by *Monell*.  *Id.* 694.

Plaintiff's allegations against the DOC and CMA are that the DOC has failed to enforce regulations, failed to supervise employees, and "has created a policy of lawlessness in permitting the continuation of medical delays."  Doc 3-1 at 13.  Plaintiff also alleges that the DOC allowed cost considerations to override its duty to provide medical care.  Plaintiff alleges that CMA failed to train its employees and did not provide proper oversight.

Such conculsory allegations do not state a claim under *Monell*.  Plaintiff has not sufficiently alleged an official policy or custom of denying inmates appropriate medical care – but only that there is a gerneralized policy of "lawlessness."  Plaintiff also does not allege that his own medical care was affected by cost considerations or denied because of some official policy.  Rather, he alleges that his surgery was delayed because a doctor did not want to perform the surgery at Lake Butler and thus invented a latex allergy, and his paperwork was not submitted in a timely fashion.  In the absence of allegations about an official policy or custom of the DOC or CMA sufficient to satisfy *Monell*, Plaintiff's § 1983 claims against the DOC and CMA should be dismissed.

### 2.  § 1983 Claim against Defendant Wolf

In Count Three, Plaintiff alleges a claim against Defendant Wolf under § 1983 for deliberate indifference to his serious medical needs.  Doc. 3-1 at 15.  Defendants argue that Plaintiff's § 1983 claim against Defendant Wolf should be dismissed because the § 1983 allegations against her are based solely upon her participation in the grievance procedure, and not upon her participation in Plaintiff's medical care.  Doc. 16 at 8.  Plaintiff argues in his response to the motion that his claims against her are not based upon her participation in the grievance procedure, but are based upon her failure as a Senior Health Services Administrator to timely submit Plaintiff's paperwork for surgery, causing delay in his treatment.  Doc. 20 at 6.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts showing an affirmative causal connection between each specific defendant's conduct

and the alleged deprivation of his constitutional rights.  *Zatler v. Wainwright,* 802 F. 2d

397, 401 (11th Cir. 1986).  If a plaintiff cannot satisfy these requirements, or fails to

provide factual allegations in support of his claim, the complaint is subject to dismissal.

*Id.* at 737-38.

With regard to deliberate indifference claims under the Eighth Amendment, the

Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97 (1976) that "to prevail on a

deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a

serious medical need; (2) the defendants' deliberate indifference to that need; and (3)

causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern.,*

*Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).  To establish the second element,

deliberate indifference to the serious medical need, the plaintiff must show: "(1)

subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3)

conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351

(11th Cir.2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979,

128 L.Ed.2d 811 (1994) (explaining that the plaintiff must show that the defendant was

"both [ ] aware of facts from which the inference could be drawn that a substantial risk

of serious harm exist[ed], and he must also [have] draw[n] the inference").

Generally, an inmate who receives a medical diagnosis and care, but desires a

different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb*

*County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505

(11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s

*Estelle* teaches, the question of whether governmental actors should have employed

additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (""[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").  For the same reason, the fact that jail medical personnel did not refer a plaintiff to an outside physician does not provide a basis for Eighth Amendment liability.  *See Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

While Defendants are correct that the denial of his grievance alone is insufficient to state a claim under § 1983, Plaintiff also has alleged that Defendant Wolf "knew or should have known" in her capacity as Senior Health Services Administrator, that Plaintiff's surgery was not being processed and that she intentionally delayed submitting necessary paperwork, causing delay in the scheduling of Plaintiff's surgery. Doc. 3-1 at 12.  A delay in treatment can constitute a deliberate indifference claim. *See, e.g., Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003) (noting that "even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of

hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.") (quoting *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999).

Although Defendants argue that a health services administrator serves in a non-medical administrative capacity, an individual does not need to be a medical provider to be liable for a deliberate indifference Eighth Amendment violation.  *See, e.g., Lancaster v. Monroe County, Ala*., 116 F.3d 1419 (11th Cir. 1997).

Therefore, taking the allegations of the complaint in the light most favorable to Plaintiff, as the Court is required to do, Defendants' motion to dismiss the § 1983 claims against Defendant Wolf should be denied.

Defendants also argue that Defendant Wolf is entitled to qualified immunity in her individual capacity because Plaintiff cannot show that Defendant Wolf violated a constitutional right.  Doc. 16 at 10.  However, given the above discussion, Plaintiff has, at least at this stage of the case, stated a plausible claim for the violation of his Eighth Amendment rights with respect to Defendant Wolf.  *McElligot v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999).  Accordingly, Defendants' motion to dismiss Defendant Wolf based on qualified immunity is also due to be denied without prejudice to the right to reassert this argument at a later stage of the case.

### 3.    Pre-Suit Requirements Under Fla. Stat. § 768.28

Plaintiff initiated this case in state court alleging state law tort claims against the DOC and CMA.  Defendants argue that Plaintiff failed to comply with the pre-suit notice and waiver requirements of Fla. Stat. § 768.28(6)(a) to sue the DOC and CMA, and that

these defendants have not waived immunity.  Fla. Stat. § 768.28(6)(a) requires a

plaintiff to present the claim in writing to the appropriate agency, and also to present the

claim in writing to the Department of Financial Services (DFS) within three years after

the claim accrues.  A plaintiff is required to wait until the DFS or the agency denies the

claim before filing suit.  Section 768.28(6)(d) provides that for medical malpractice

claims, the failure of the DFS or the appropriate agency to make final disposition within

ninety days after the claim is filed shall be deemed a final denial of the claim, and a

written denial is not necessary.  Section 768.28(6)(b) provides that pre-suit notice is a

condition precedent to maintaining an action.  *See Public Health Trust of Miami-Dade

County v. Acanda*, 71 So.3d 782, 784-85 (Fla. 2011).

Pre-suit notice is mandatory. Defendants argue that Plaintiff failed to provide the

CMA with any notice of intent because Plaintiff served only the DFS with a Notice of

Intent, dated March 3, 2011, which referenced the CMA.  Defendants have provided the

declaration of Jane Holmes-Cain, the Executive Director of the Correctional Medical

Authority, to support their argument.  Based upon a review of her files, Holmes-Cain

avers that the CMA did not receive any Notices of Intent from Plaintiff.  Doc. 16-3 at 1-

2.  Because it is not disputed based upon the declaration of Ms. Holmes-Cain that the

CMA never received a Notice of Intent from Plaintiff, as required, Plaintiff's state law tort

claims against the CMA are due to be dismissed. Fla. Stat. § 768.28(6)(b).

Defendants also argue that Plaintiff failed to serve the DFS with a timely Notice

of Intent with respect to the DOC.  Plaintiff served only the DOC with his Notice dated

October 24, 2013, and did not serve a Notice upon DFS until November 15, 2013, when

the Notice dated November 12, 2013, was received.  Plaintiff then failed to wait the requisite ninety days to institute his complaint.  Fla. Stat. § 768.28(6)(a).  Instead, Plaintiff filed his complaint on December 9, 2013, less than one month after serving the Notice upon DFS. Doc. 3-1 at 1.

Defendants have filed the declaration of Michael Andrews, a Risk Management Program Administrator at the Department of Financial Services, Division of Risk Management to show that Plaintiff did not comply with the pre-suit requirements.  The declaration shows that a notice of intent, dated March 3, 2011, was submitted to the DFS concerning Plaintiff's medical treatment.  This Notice referenced only the CMA, not the DOC. Although DFS received a notice of intent concerning the DOC, dated October 24, 2013, the notice was not provided to the DFS but was forwarded to that office from the DOC.  Finally, DFS received a third Notice of Intent, dated November 12, 2013, directly from Plaintiff.  A fourth Notice of Intent, dated January 28, 2014, was forwarded from the DOC.  DFS also received a fifth Notice of Intent, dated February 11, 2014. Doc. 16-1 at 1-2.  Both the fourth and fifth Notices were provided after the filing of the complaint.

Defendants also have provided the declaration of Debra Hix, a paralegal specialist with the DOC.  Ms. Hix states that the earliest Notice of Intent received by the DOC was dated October 24, 2013.  A second Notice of Intent was dated January 28, 2014, after the filing of the complaint.  Doc 16-2 at 1-2.

The declaration demonstrates that Plaintiff did not comply with § 768.28(6)(a), which requires that Plaintiff serve both the DOC and the DFS.  The October 24, 2013

Notice Plaintiff sent was insufficient to alert the DFS to the claim, as it had only been served upon the DOC, even though it had been forwarded to the DOC after receipt. *Hamide v. Department of Corrections*, 584 So. 2d, 136 (Fla. 1st DCA 1991).

With regard to the  November 12, 2013 Notice, pursuant to § 768.28(6)(d), Plaintiff was required to wait ninety days or until the agency or DFS denied his claim. Plaintiff did not wait ninety days as his complaint was filed in the state court on December 9, 2013.  Doc. 3-1 at 1.  There is no evidence, and Plaintiff does not argue, that the DFS or the agency issued a denial of his claims prior to the expiration of the ninety-day period.

Although Plaintiff argues that Defendants have waive immunity because they obstructed him from complying with the pre-suit requirements, this argument fails.  A waiver of sovereign immunity pursuant to § 768.28 is construed strictly.  *Hamide*, 584 So. 2d at 137. Furthermore, it is clear that Plaintiff was aware of the requirements of the statute, having sent a Notice to DFS as far back as 2011 concerning his medical treatment.

Plaintiff also argues that he did provide the CMA with the required Notice in 2011, and attaches a letter from CMA as Exhibit F to his response.  Doc. 20-1.  This letter does not demonstrate that Plaintiff served CMA with a Notice, as required. Rather, the letter evidences that the Department of Health forwarded a letter to the CMA, which in any case would be insufficient to comply with § 768.28(6)(a), as discussed above. *Hamide*, 584 So. 2d at 137.

Accordingly, because Plaintiff failed to comply with the requirements of §

768.28(6) by failing to provide the CMA with a Notice of Intent—and after providing

Notices to the DOC and DFS, by failing to wait the requisite ninety days before filing his

complaint—all of Plaintiff's state law tort claims against the DOC and CMA are due to

be dismissed.  Because his federal § 1983 claims are also due to be dismissed, the

DOC and CMA should be terminated as Defendants in this action.

### 4.    Defendants Carrero, West, and Wolf are Immune from Tort Liability

In Counts 8, 9 and 11, Plaintiff alleges that Defendant Carrero, Defendant West

and Defendant Wolf were negligent in the performance of their duties.  Doc. 3-1 at 16-

17.  Defendants argue that Defendants Carrero, West, and Wolf are immune from tort

liability pursuant to Fla. Stat. § 768.28(9)(a), which provides in relevant part that:

> No officer, employee, or agent of the state or of any of its subdivisions
> shall be held personally liable in tort or named as a party defendant in any
> action for any injury or damage suffered as a result of any act, event, or
> omission of action in the scope of her or his employment or function,
> unless such officer, employee, or agent acted in bad faith or with
> malicious purpose or in a manner exhibiting wanton and willful disregard
> of human rights, safety, or property

Because Plaintiff's claims in Counts 8, 9 and 11 that Defendants Carrero, West

and Wolf were negligent in the performance of their duties within the scope of their

employment, Plaintiff's claims against Carrerro, West and Wolf under state law are

barred by this statute.  *Hunt v. Corrections Corp. of America*, 38 So. 3d 173 (Fla. 1st

DCA 2010) (noting that § 768.28(9)(a) requires that any civil action for an employee's

negligence be maintained against the governmental entity); *Department of Corrections

v. Koch*, 582 So. 2d 5, 8 (Fla. 1st DCA 1991) (noting that § 768.28(9) did not abolish

"right to sue and recover based on the liability of a negligent employee; it merely

required that action be maintained against the employer as the sole, substitute defendant.").

Accordingly, because Defendants Carrero, West, and Wolf are immune from tort liability as employees of the state Plaintiff's state law negligence claims against them should be dismissed.

### 5.    Conspiracy Claims Against All Defendants

In Count 7 of his complaint Plaintiff purports to allege a claim for conspiracy under 42 U.S.C. § 1985. Specifically, Plaintiff alleges that Defendants Wolf, Carrero, and West conspired to deprive him of his right to be free from cruel and unusual punishment by refusing to provide him with timely medical care.  Doc. 3-1 at 12. Defendants argue that Plaintiff's conspiracy claims fails to state a claim under 42 U.S.C. § 1985, because Plaintiff fails to allege sufficiently an agreement between Defendants.  Doc. 16 at 17; Doc. 34 at 8; Doc. 51 at 10.

To state a claim under §1985, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

The first problem is that Plaintiff has not sufficiently alleged the existence of a conspiracy.  A plaintiff must show, among other things, that defendants "reached an

understanding to violate his rights." *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271,

1283 (11th Cir. 2002) (citations omitted.)  A claim of conspiracy requires "that Plaintiff

provide more than a label or a conclusion," and "Plaintiff cannot rely on subjective

suspicions and unsupported speculation but must provide sufficient facts to show that

an agreement was made." *Oden v. Thomas*, 2013 WL 5502963 (M.D. Ala. 2013)

(adopting Magistrate Judge's recommendation that inmate defendants be dismissed

because Plaintiff did not sufficiently allege conspiracy with defendant state actors.)

Plaintiff's complaint lacks any facts to reflect that any understanding was made

between Defendants to deprive him of his rights.  Rather, Plaintiff relies solely on labels

and conclusions to support his claim.  There are no facts in the complaint to suggest

that Defendants Wolf, Carrero, and West, conspired to deprive Plaintiff of his rights

other than that they jointly responded to a grievance.  Plaintiff's bare assertion of the

existence of a conspiracy fails to assert any facts necessary to establish a conspiracy

between Defendants.

Plaintiff also purports to bring a claim for conspiracy under Fla. Stat. § 777.04(3).

This statute is a state criminal statute, and does not create a private cause of action.

Accordingly, because Plaintiff has not alleged sufficient facts to support a claim for

conspiracy, and Plaintiff cannot bring a private cause of action under a state criminal

statute, Plaintiff's claims of a conspiracy are due to be dismissed.

**B.     Defendant West's Motion to Dismiss, Doc. 34**

  **1.     Deliberate Indifference Claims Against Defendant West**

Plaintiff alleges in Count Two that Defendant West was deliberately indifferent to

his serious medical needs.  Defendants argue that Plaintiff has failed to state a claim

for deliberate indifference because Defendant West is the Assistant Warden, and there

are no facts alleged demonstrating that the Assistant Warden had any personal

participation in the alleged deprivation of Plaintiff's constitutional rights.  Doc. 34 at 4.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts

showing an affirmative causal connection between each specific defendant's conduct

and the alleged deprivation of his constitutional rights.  *Zatler v. Wainwright,* 802 F. 2d

397, 401 (11th Cir. 1986).  If a plaintiff cannot satisfy these requirements, or fails to

provide factual allegations in support of his claim, the complaint is subject to dismissal.

*Id.* at 737-38.

In this case, Plaintiff has failed to state a claim that Defendant West was

deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff does not allege that

Defendant West was in any way responsible for or involved with Plaintiff's medical care.

Plaintiff's only allegation relevant to Defendant West is that Defendant West responded

to one of his grievances, and after Defendant West reviewed Plaintiff's medical file,

Defendant West stated in response that Plaintiff was receiving proper medical care.

Doc. 3-1 at 10.  The "denial of a grievance, by itself without any connection to the

violation of constitutional rights alleged by plaintiff, does not establish personal

participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Plaintiff also alleges that Defendant West did not forward one of his grievances

to the Chief Medical Officer.  This allegation also is insufficient to state a constitutional

violation, for the reasons discussed in detail below regarding  Plaintiff's due process

claim against Defendant West.

Further, Plaintiff cannot bring a claim against Defendant West, as the Assistant Warden, under a theory of *respondeat superior.* Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  To be liable, the claimant must show that the official "personally participate[d]" in the act or there was "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Because there are no such allegations regarding Defendant West in the complaint, Plaintiff's § 1983 claims against Defendant West should be dismissed.

### 2.    Eleventh Amendment Immunity

Defendants request dismissal of Plaintiff's claims against Defendants West and Defendant Carrero in their official capacities.[2] Doc. 34 at 7, Doc. 51 at 9.  The law is well settled that a suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes.  *Will .v Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).  Therefore, under the Eleventh Amendment, when state officials are sued for damages in their official capacity, the state officials are immune from suit in federal court. *Jackson v. Georgia Dep't. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Accordingly, any official capacity claims

---

[2] Defendants do not request dismissal of Plaintiff's official capacity claim against Defendant Wolf in the motions to dismiss.  However, the analysis with respect to Defendant Wolf is identical to the analysis of Defendants West and Carrero and, thus, any official capacity claim against Defendant Wolf is also due to be dismissed.

against Defendants Wolf, Carrero, and West should be dismissed.

### 3.      Due Process Claim Against Defendant West

In Count 14, Plaintiff alleges that Defendant West deprived him of due process because he interfered with his right to file grievances by "failing to follow FDOC policies requiring that medical grievances be reviewed and responded to by the Chief Medical Officer." Doc. 3-1 at 18.

As discussed above, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Furthermore, there is no protected interest in the inmate grievance procedures. *Baker v. Rexroad*, 159 Fed.Appx. 61 (11th Cir. 2005) (holding that "we agree with other circuits that have held that these [inmate grievance] proceedings are not constitutionally mandated."); *Dunn v. Martin*, 178 Fed.Appx. 876 (11th Cir. 2006). Therefore, even if Defendant West did not forward Plaintiff's medical grievance to the Chief Medical Officer for review, this failure does not constitute a constitutional violation.

Accordingly, Plaintiff's claim that he was denied due process is due to be dismissed, and because all claims against Defendant West are due to be dismissed, Defendant West should be terminated as a Defendant.

### C.      Defendant Carrero's Motion to Dismiss, Doc. 51

### 1.      Deliberate Indifference Claim

Defendants contend that Plaintiff has failed to state a claim against Defendant Carrero for deliberate indifference to a serious medical need because any delay in the

scheduling of Plaintiff's surgery was attributable to Plaintiff.  Doc. 51 at 4-9.  Plaintiff argues  that Defendant Carrero is still liable for the delay in rescheduling his surgery after Plaintiff first refused the surgery so that he could meet with his lawyer.  Plaintiff alleges Defendant Carrero was displeased with him for refusing surgery and thus required Plaintiff to visit sick call three more times before Plaintiff would be rescheduled for surgery, even though Plainitff's medical status and need for surgery had not changed, needlessly delaying the rescheduling of his surgery.  Doc. 51 at 11.

As discussed above, to establish an Eighth Amendment violation requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter

for medical judgment' and therefore not an appropriate basis for grounding liability

under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*,

871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the

propriety or adequacy of a particular course of treatment.  Along with all other aspects

of health care, this remains a question of sound professional judgment.'") (quoting

*Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d

698, 703 (2d Cir.1998) ("[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment given is

adequate, the fact that a prisoner might prefer a different treatment does not give rise to

an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988)

("Although the Constitution does require that prisoners be provided with a certain

minimum level of medical treatment, it does not guarantee to a prisoner the treatment

of his choice.").

Although Defendants argue that Plaintiff's refusal of the surgery when he was

initially transported to Lake Butler is fatal to his claim, the Court disagrees.  Although

Plaintiff's refusal might negate a claim of deliberate indifference up to that point, Plaintiff

alleges that Defendant Carrero after that failed immediately to reschedule Plaintiff's

surgery even though Defendant Carrero knew Plaintiff still wanted the surgery and that

Plaintiff had refused the surgery because of the scheduled visit with his lawyer. Plaintiff

alleges that Defendant Carrero made Plaintiff restart the sick-call process before the

surgery could be rescheduled, even though Plaintiff's medical condition had not

changed.  As discussed above, delay can support a deliberate indifference claim. *See,*

*e.g., Farrow*, 320 F.3d 1235 (noting that "a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.").

Furthermore, although Defendants urge the Court to conclude that there is no claim for deliberate indifference because Plaintiff's knee injury does not constitute a serious medical need, the Court declines to do so on the basis of the allegations in the complaint.  There is no medical evidence in the record at this point, and Plaintiff has affirmatively alleged that a physician told Plaintiff his knee needed surgery "urgently."  A condition that requires surgery urgently could be sufficient to constitute a serious medical need.  *Palermo v. Correctional Medical Services, Inc.*, 133 F. Supp.2d 1348 (S.D. Fla. 2001).  As such, this is an issue that is more appropriately resolved on a developed record when the parties can submit medical evidence of Plaintiff's knee condition.

Accordingly, accepting the factual allegations in the complaint as true, as the Court is required to do so on a motion to dismiss, the Court concludes that Defendants' motion to dismiss the § 1983 claims against Defendant Carrero should be denied.

## IV. RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.   Defendant West's Motion to Dismiss, Doc. 34, should be **GRANTED** and Defendant West should be terminated as a party.

2.  Defendants Florida Dept. Of Corrections, Florida Correctional Medical Authority and R. Wolf's Motion to Dismiss, Doc. 16, should be **GRANTED in part and DENIED in part**.  All claims against the DOC and CMA should be dismissed

and the DOC and CMA should be terminated as parties. All claims against Defendant Wolf should be dismissed except the § 1983 deliberate indifference claims Defendant Wolf.

3.   Defendant Carrero's Motion to Dismiss, Doc. 51, should be **GRANTED in part and DENIED in part.**.  All claims against Defendant Carrero should be dismissed except the § 1983 claims for deliberate indifference to Plaintiff's serious medical needs.

4.   The only claims that remain and should be permitted to proceed are Plaintiff's § 1983 deliberate indifference claims against Defendants Wolf and Carrero.

**IN CHAMBERS**, at Gainesville, Florida, this 26th day of January 2015.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>
       **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**