IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RAYL LYNN KELLAR,

       Plaintiff,

v.                                  CASE NO. 4:14-cv-84-RH-GRJ

FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint, ECF No. 70. Plaintiff has filed a response in opposition to Defendants' motion. (ECF No. 77.)[1] Therefore, Defendants' motion to dismiss is ripe for review. For the reasons explained below, Defendants' motion to dismiss should be granted in part and denied in part.

## I. BACKGROUND

       Plaintiff initiated this case on December 3, 2013 by filing a *pro se* complaint in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, asserting claims against five defendants. (ECF No. 1.)[2] On February 21, 2014,

---

      [1] Plaintiff also attempted to file an earlier opposition, which he provided to South Florida Reception Center for mailing on August 13, 2015, ECF Nos. 76, 76-1, that the Court did not receive.

      [2] In accordance with Plaintiff's Motion for Voluntary Dismissal Without Prejudice of Defendant J. Gonzalez-MD/CHO, ECF No. 48, Defendant Gonzalez, who was initially named in Plaintiff's complaint, was dismissed without prejudice. (ECF No. 49.)

Defendants R. Wolf, Florida Department of Corrections ("FDOC"), and Florida

Correctional Medical Authority ("FCMA") filed a notice of removal pursuant to 28 U.S.C.

§ 1441. (*Id.*) Defendants then moved to dismiss Plaintiff's complaint in accordance with

Fed. R. Civ. P. 12(b)(6). (ECF Nos. 16, 34, 51.)[3] On January 26, 2015 the undersigned

recommended that (1) Defendant West's motion to dismiss be granted and Defendant

West be terminated as a party, (2) all claims against the FDOC and FCMA be

dismissed, the FDOC and FCMA be terminated as parties, and all claims against

Defendant Wolf be dismissed except the 42 U.S.C. § 1983 deliberate indifference

claims, (3) all claims against Defendant Carrero be dismissed except the § 1983 claims

for deliberate indifference to Plaintiff's serious medical needs, and (4) the only claims

that remain and should be permitted to proceed are Plaintiff's § 1983 deliberate

indifference claims against Defendants Wolf and Carrero. (ECF No. 55.)  The District

Judge reviewed the report and recommendation and concluded that the Eighth

Amendment claims against the individual defendants and the negligence claim against

Defendant Carrero should proceed but that and Plaintiff's remaining claims should be

dismissed with leave to amend in limited respects. (ECF No. 58.)

In accordance with the Court's order, Plaintiff filed his first amended complaint

on April 30. 2015, naming Julie Jones, Secretary of the FDOC, C.T. West, Jr., R. Wolf,

---

[3] Defendants FDOC, FCMA, and Wolf filed a motion to dismiss on March 17, 2014, presenting various arguments including failure to state a claim, qualified immunity, and failure to comply with pre-suit notice requirements of Fla. Stat. § 768.28. (ECF No. 16.) Defendant C.L. West moved to dismiss Plaintiff's complaint on June 2, 2014, based on Plaintiff's failure to state a claim against Defendant West and the Eleventh Amendment. (ECF No. 34.) Defendant L. Carrero also moved to dismiss Plaintiff's complaint on October 15, 2015, arguing that Plaintiff failed to state a claim and that the Eleventh Amendment barred Plaintiff's claims. (ECF No. 51.)

and L. Carrero as Defendants. (ECF No. 62.) Defendants Carrero, FDOC, West, and

Wolf then filed the instant motion to dismiss. (ECF No. 70.)

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff's First Amended Complaint asserts eight counts against the Secretary of

the FDOC in her official capacity and against Defendants West, Wolf, and Carrero in

their individual capacities. (ECF No. 62.) Plaintiff alleges that in 2006, he was injured as

a result of a fall from a top bunk in S Dormitory Housing Unit while assigned to prison

construction at Columbia Correctional Institution-Annex. (*Id.* ¶ 15.) Plaintiff was sent to

the medical clinic due to injury to his left and right ankles and his right knee and that x-

rays were ordered for the left ankle due to discoloration and swelling but not for the right

ankle or knee. (*Id.*) Plaintiff was given ambulatory assistance and medication for pain

but did not undergo x-rays until three or four days later, which ultimately included only

Plaintiff's left ankle. (*Id.*)

Plaintiff was then transferred to Cross City Correctional Institution ("CCCI") and

was assigned to various jobs in maintenance and prison industries. (*Id.* ¶ 16.) Plaintiff

asserts that he went to medical sick call on various occasions complaining of pain in his

right knee, and that throughout 2007 through 2010, he was seen by various nurses and

doctors, none of whom requested x-rays or performed any examinations other than

visual examinations. (*Id.*) On several occasions after his knee collapsed and required

visits to sick call, the medical doctor only conducted visual examinations and claimed

that Plaintiff's pain was due to old age and would get worse. (*Id.* ¶ 17.) X-rays were not

ordered. (*Id.*)

In 2010, Defendant Carrero replaced the medical doctor at CCCI. (*Id.* ¶ 18.)

Plaintiff states that when Defendant Carrero examined Plaintiff in 2010, she noted that Plaintiff's knee had not been x-rayed since his injury was reported in 2006 and ordered that x-rays be taken as per policy before an MRI could be ordered. (*Id.* ¶ 19.) The x-rays did not reveal any injury to Plaintiff's knee and an MRI was then ordered and performed at Lake Butler Regional Medical Center. (*Id.* ¶ 20.) The MRI revealed that there was massive muscular tearing in Plaintiff's knee and that surgery was urgently needed. (*Id.*)

After Plaintiff found out that he needed urgent surgery, Plaintiff made arrangements for an attorney visit for June 2010. (*Id.* ¶ 21.) The scheduled attorney visit cost $500 and was a non-refundable advance to cover expenses. (*Id.*) However, on the day prior to his scheduled legal visit, Plaintiff was transferred to Lake Butler to undergo surgery. (*Id.* ¶ 22.) Plaintiff explained to the nurse at Lake Butler that he had a scheduled legal visit in conflict with the transfer and the nurse advised Plaintiff to sign a medical refusal and Plaintiff would be rescheduled for surgery. (*Id.*)

When Plaintiff had not yet undergone surgery by August 2010, he returned to sick call and was told that Defendant Carrero "was upset because plaintiff had refused surgery," and that if Plaintiff still wanted surgery "he would have to start over with the whole procedure, including returning to sick call for 3 visits to see the doctor and paying the medical co-payment for each visit." (*Id.* ¶ 24.) Thus, Plaintiff went through the sick call procedures, but Defendant Carrero refused to reissue medication for pain and inflammation even though Plaintiff still complained of pain and there was no change in his condition, for which Defendant Carrero had previously prescribed medication. (*Id.* ¶ 25.)

After waiting in excess of four months without medication or surgery, Plaintiff exhausted the grievance procedure by filing a medical grievance for failure to provide surgery prescribed by a medical doctor and failing to give medication for pain and inflammation. (*Id.* ¶ 26.)[4] Plaintiff further asserts that, although required by policy and regulation to have the Chief Medical Officer review and sign off on medical grievances, Defendant West refused to follow the established procedures and instead personally reviewed Plaintiff's medical records, ultimately determining that Plaintiff was receiving proper medical care. (*Id.* ¶ 27.)

---

[4] Based upon the four corners of Plaintiff's amended complaint, it is questionable whether Plaintiff did in fact exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Under the PLRA, an inmate must use all steps in the administrative process and comply with an administrative "deadlines and other critical procedural rules" before exhaustion is proper. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). If an inmate has filed an "untimely or otherwise procedurally defective administrative grievance or appeal" he has not properly exhausted his administrative remedies. *Id.* at 83-84. Although Plaintiff asserts that he "exhausted the grievance process by filing a medical grievance for failure to provide surgery prescribed by a medical doctor or giving medication for pain and inflammation," (ECF No. 62 ¶ 26), and attached a copy of his formal grievance and appeal, (*Id.* at 5-15), a careful review of the response to Plaintiff's appeal suggests otherwise. Specifically, the appeal response notes that Plaintiff's "request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable. . . . . Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed . . . to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. . . . . Based on the foregoing information, your grievance is returned without action." (ECF No. 62 at 12.) Thus, it appears questionable as to whether Plaintiff did indeed exhaust his administrative remedies or whether his appeal was procedurally defective, and therefore, did not effectively exhaust his administrative remedies as required by the PLRA. Nonetheless, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Here, Defendants did not assert failure to exhaust as an affirmative defense so Plaintiff was not required to address it in his reply. Thus, the Court lacks authority to inquire further into the issue.

Count I of Plaintiff's amended complaint alleges that Defendant Carrero was deliberately indifferent to Plaintiff's medical needs, thereby causing Plaintiff injury. (*Id.* ¶ 38.) Plaintiff states that Defendant Carrero "chose to intentionally interfere in the treatment of plaintiff's medical needs by refusing to immediately reschedule plaintiff for surgery," when surgery was not performed due to the conflict with Plaintiff's legal visit and Defendant Carrero knew that Plaintiff still wanted and needed surgery. (*Id.* ¶ 30.) Plaintiff alleges "intentional misconduct" on behalf of Defendant Carrero based on Plaintiff's initial refusal of treatment, and not because of any sound medical practice. (Id.) Further, Plaintiff says that Dr. Carrero was fully aware of the high probability of risk resulting from a delay in surgery and instead chose to engage in acts that she knew would result in additional delay in treatment. (*Id.* ¶ 31.)

Count II alleges that Defendant West, the Assistant Warden and Grievance Coordinator, was also deliberately indifferent to Plaintiff's medical needs, thereby causing Plaintiff injury. (*Id.* ¶ 39.) According to Plaintiff, Defendant West knew of the wrongfulness of his conduct in refusing to follow established policy regarding medical grievances. (*Id.* ¶ 28.) Additionally, Defendant West knew of the high probability that Plaintiff's injury would get worse with delay and instead intentionally engaged in wrongful conduct by failing to refer Plaintiff's medical grievance to the Chief Medical Officer for evaluation. (*Id.*) Moreover, Defendant West's actions required no special medical skill or judgement other than that normally expected of a grievance coordinator in the regular performance of his duties. (*Id.* ¶ 29.)

In Count III Plaintiff alleges that Defendant Wolf was also deliberately indifferent to Plaintiff's medical needs, thereby causing Plaintiff injury. (*Id.* ¶ 40.) Plaintiff states

that Defendant Wolf, Senior Health Administrator, was engaged in her authorized duties in administering the care, control, and custody of administrative records and failed to exercise reasonable care to ensure that Plaintiff's surgery was rescheduled or alert her supervisors as to the delay or denial of prescribed surgery. (*Id.* ¶ 32.) Moreover, Defendant Wolf knew that delay in treatment posed a high probability of risk based on the doctor's diagnosis that surgery was urgently needed, and instead chose to ignore the risk and refused to notify her supervisors of the delay in Plaintiff's treatment. (*Id.* ¶ 33.)

Count IV alleges that Defendant FDOC was grossly negligent and deliberately indifferent to Plaintiff's medical needs, thereby causing injury, mental anguish, and financial damages. (*Id.* ¶ 41.) Plaintiff asserts that Defendant FDOC failed to enforce policies and ensure the timely performance of medically prescribed surgery. (*Id.* ¶¶ 34-35.) Moreover, Defendant FDOC knew Plaintiff was not receiving any medication to relieve pain and inflammation and knew Plaintiff had filed multiple medical grievances regarding his complaints; however, Defendant FDOC failed to conduct an adequate investigation into Plaintiff's complaints, instead choosing to accept the institutional responses as adequate, and told Plaintiff to use the sick call procedures. (*Id.* ¶ 34.) Plaintiff further alleges that Defendant FDOC failed to investigate Plaintiff's lack of medical treatment for pain and inflammation although continually advised that Plaintiff was not receiving the pain medication, anti-inflammatory medication, or prescribed surgery. (*Id.* ¶ 36.) Plaintiff asserts that relying on the institutional response to address Plaintiff's concerns was "particularly egregious," considering Plaintiff's medical records "revealed, clearly and concisely, that medical surgery was urgently needed; had not

been performed six months after the diagnosis; [and] that plaintiff continued to grieve the lack of pain medication and anti-inflammatory medication." (*Id.*)

In Count V Plaintiff alleges that Defendant Carrero was grossly negligent in failing to ensure timely medical treatment, thereby causing Plaintiff injury, pain, and discomfort. (*Id.* ¶ 42.) Count VI alleges that Defendant Carrero was also grossly negligent in failing to continue to prescribe pain and anti-inflammatory medication for Plaintiff, thereby causing pain, discomfort, and mental anguish. (*Id.* ¶ 43.) Specifically, Plaintiff alleges that Defendant Carrero failed to prescribe pain and anti-inflammatory medication even though she knew (1) there had been no change in Plaintiff's medical condition, which required surgery, (2) that Plaintiff continued to complain of pain and swelling, (3) that Plaintiff's pain was increasing in severity, and (4) that Plaintiff's knee felt hot when touched. (*Id.* ¶ 37.)

Count VII alleges that Defendant West was grossly negligent in contributing to the delay in medical treatment by refusing to follow established policies requiring review of medical grievances by a Chief Medical Officers, thereby causing Plaintiff pain, swelling, discomfort, and mental anguish. (*Id.* ¶ 44.)

Finally, Count VIII alleges that Defendant Wolf was grossly negligent in failing to advise superiors that prescribed surgery was not being scheduled by CHO and that Plaintiff continued to seek medical care, thereby causing Plaintiff injury. (*Id.* ¶ 45.)

Plaintiff seeks $300,000.00 in compensatory, special, and general damages. (*Id.* ¶ 46.) Plaintiff also seeks punitive damages from Defendants West, Wolf, and Carrero in the amount of $10,000.00 each and an additional $25,000.00 in punitive damages from Defendant Carrero for intentional infliction of unnecessary pain and suffering. (*Id.*

¶¶ 47-48.) Plaintiff lastly requests injunctive relief against Defendant FDOC, prohibiting delay in medical treatment of prisoners under its custody, care, and control. (*Id.* ¶ 49.)[5]

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and shall "dismiss the complaint . . . if the complaint . . . fails to state a claim upon which relief may be granted. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft v. Iqbal*, 556 U.S. 662, 1951-53 (2009), the Supreme Court stated that *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line

---

[5] Plaintiff's amended complaint seeks "[i]njunctive relief against the agency, defendant FDOC proscribing delay in medical treatment of prisoners under its custody, care, and control." (ECF No. 62 ¶ 49.) The Court interprets Plaintiff's request as a request for injunctive relief prohibiting Defendant FDOC from delaying medical treatment.

from conceivable to plausible."

While a *pro se* litigant's allegations are entitled to the benefit of liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs v. Cnty of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by *Iqbal)*.

## III.  DISCUSSION

### A.  *Eight Amendment Claims*

Defendants argue that Counts I, II, and III for federal civil rights violations must be dismissed because Plaintiff fails to state a claim for relief. (ECF No. 70 at 11.) The Court disagrees.[6]

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976.) As the Eleventh Circuit has stated, "[d]eliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)). A plaintiff must allege that the defendant actually knew of the serious risk of harm. *See id.*

---

[6] As the district judge noted in his March 22, 2015 order, Plaintiff "has sufficiently alleged that each individual defendant knowingly took part in the denial of appropriate treatment for a serious medical need," and that Plaintiff "may seek relief under § 1983." (ECF No. 58 at 5.)

(holding that plaintiff did not allege a constitutional violation because plaintiff did not allege defendants "actually knew of the serious risk" posed).

Plaintiff sufficiently alleges deliberate indifference by Defendants West, Wolf, and Carrero to defeat a motion to dismiss the Eighth Amendment claims. "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin*, 738 F.3d at 1251 (quoting *Iqbal*, 556 U.S. at 678). Although Plaintiff intertwines his factual allegations with legal conclusions in lengthy sentences, Plaintiff does allege factual allegations that allow the Court to draw a reasonable inference that the Defendants acted unlawfully. Although merely reciting that the defendants were "deliberately indifferent" and that the defendants "knew or should have known" of a risk is insufficient to survive a motion to dismiss, *id.*, Plaintiff goes beyond mere recitation of these legal conclusions.

Defendants list each factual allegation Plaintiff makes regarding each Defendant and argue that Plaintiff asserts his claims in conclusory fashion and that Plaintiff's claims do not meet the legal standard for deliberate indifference claims. However, Defendants's arguments rest more heavily on why the facts alleged cannot constitute deliberate indifference. These arguments may be sufficient on a motion for summary judgment, but not here on a motion to dismiss.

Relying in part on *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994), Defendants further argue that Plaintiff has failed to present evidence of a physical injury sufficient to demonstrate that the delay in medical treatment rises to

a constitutional violation. (ECF No. 70 at 12-17.)  *Hill* was an appeal from the district

court's denial of summary judgment. 40 F.3d at 1181. Thus, while the plaintiff in *Hill*

may have had to present sufficient evidence of the detrimental effect of delay in

medical treatment to succeed, such is not the standard for a motion to dismiss.

Moreover, as a general proposition a delay in treatment can constitute a deliberate

indifference claim. *See, e.g., Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003)

(quoting *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (noting that "even

where medical care is ultimately provided, a prison official may nonetheless act with

deliberate indifference by delaying the treatment of serious medical needs, even for a

period of hours, though the reason for the delay and the nature of the medical need is

relevant in determining what type of delay is constitutionally intolerable.").

    While not succinctly laid out, viewing the allegations in a light most favorably to

Plaintiff, Plaintiff has set forth factual allegations that plausibly suggest a delay in

Plaintiff's serious medical needs constitutes deliberate indifference. Plaintiff asserts that

he has continued to complain of pain and swelling, that his pain is increasing in

severity, and that his knee temperature is hot when touched. (ECF No. 62 ¶ 37.)

Further, Plaintiff alleges that he "suffered additional infliction of pain, suffering, and

injury," due to the additional delay in treatment. (*Id.* ¶ 31.) Additionally, the fact that

Plaintiff had "massive muscular tearing and needed surgery urgently," based on an MRI

performed over five years ago in April 2010, *id.* ¶¶ 20-21, bolsters Plaintiff's claim that

his pain increased and that he "suffered additional . . . injury." Surely, these allegations

plausibly suggests that Defendants have been deliberately indifferent to Plaintiff's

serious medical needs. As such, Counts I, II, and III have been sufficiently alleged and,

therefore, Defendants' motion to dismiss in this regard is due to be denied.

Defendants further argue that the Eleventh Amendment bars Plaintiff from suing the FDOC under § 1983, and therefore, Count IV against the FDOC must be dismissed. (ECF No. 70 at 6.) Defendants' argument misses the mark as to Count IV in two respects.

First, while generally the FDOC would be immune from a § 1983 claim under the Eleventh Amendment, *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989), Defendant FDOC removed the case to this court, thereby waiving its Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 616, 624 (2002) (holding that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum.").

Second, Count IV alleges negligence by the FDOC pursuant to Fla. Stat. § 768.28, not under § 1983. (ECF No. 62 ¶ 41; ECF No. 77 at 4.) Although Defendants appear to interpret Plaintiff's use of the words "deliberately indifferent" in Count IV of the amended complaint against the FDOC as a claim under § 1983, Plaintiff's amended complaint clearly indicates that Counts IV, V, VI, VII, and VIII are negligence claims pursuant to § 768.28 and Fla. Stat. § 768.72(2)(a)-(b). (ECF No. 62 at 10-11.) Moreover, Plaintiff clarifies such in his Opposition to Defendants' Motion to Dismiss. (ECF No. 77 at 1.) Thus, Defendants' argument regarding Plaintiff's alleged § 1983 claim is denied considering there is none presented in Plaintiff's amended complaint.

***Gross Negligence Claims***

###### *i.*   ***FDOC***

Defendants argue that if Plaintiff's gross negligence claims against the individual Defendants stand then Plaintiff's gross negligence claim against the FDOC must be dismissed because the individual defendants' conduct would have to be more than gross negligence to strip them of their sovereign immunity to be liable under a state law theory of gross negligence, thus, relieving the FDOC from liability on their behalf. (ECF No. 70 at 9 n.6.) The Court agrees with Defendants to an extent. As will be discussed in further detail below, Plaintiff fails to state a cause of action in Count VII against Defendant West and in Count VIII against Defendant Wolf because sovereign immunity protects them from being sued in their individual capacities. Thus, with regard to any alleged negligence Plaintiff alleges was committed Defendant West and Defendant Wolf, Plaintiff can only proceed with his claim against their employer: the FDOC. Consequently, Plaintiff's gross negligence claim against the FDOC in Count IV is not subject to dismissal.

Defendants further argue that Count IV must be dismissed because— to the extent that Defendant Wolf and Defendant West's actions may be attributed to the FDOC—Plaintiff nonetheless fails to allege any additional injury he sustained as a result of Defendants' alleged failure to act. (ECF No. 70 at 15, 17.) Defendants' argument confuses Plaintiff's Eighth Amendment and negligence claims. As previously discussed, Count IV is a claim for negligence, not an Eighth Amendment violation. Thus, Defendants' argument regarding the dismissal of Count IV for failure to allege any additional injury is without merit.

### ii.    Defendants West, Wolf, and Carrero

Next, Defendants argue that Defendants West, Wolf, and Carrero are immune

from being named in a suit under state law for gross negligence. (ECF No. 70 at 7.)

Pursuant to § 768.28(9)(a),

> [n]o officer, employee, or agent of the state or of any of its subdivisions
> shall be held personally liable in tort or named as a party defendant in any
> action for any injury or damage suffered as a result of any act, event, or
> omission of action in the scope of her or his employment or function,
> unless such officer, employee, or agent acted in bad faith or with
> malicious purpose or in a manner exhibiting wanton and willful disregard
> of human rights, safety, or property.

"Conduct meeting the 'wanton and willful' standard in the context of § 768.28(9)(a),

must be 'worse than gross negligence,' . . . and 'more reprehensible and unacceptable

than mere intentional conduct.'" *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp.

2d 1200, 1225 (M.D. Fla. 2011) (citations omitted). Bad faith under § 768.28(9)(a) has

been equated with the actual malice standard. *Bloom v. Alvereze*, 498 F. App'x 867,

881 (11th Cir. 2012). "[C]onduct committed in bad faith has been characterized as

conduct acted out with actual malice." *Kastritis*, 835 F. Supp. 2d at 1225 (citing *Parker

v. State Bd. Of Regents ex rel. Florida State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA

1998)).

Viewing the factual allegations in a light most favorable to Plaintiff, Plaintiff has

not sufficiently alleged or included allegations that would plausibly lend support to gross

negligence causes of action against Defendant West or Defendant Wolf. Allegations of

gross negligence are not sufficient to extend liability to Defendants acting in their official

capacities. *See Kastritis*, 835 F. Supp. 2d at 1225. Plaintiff alleges in Count VII that

Defendant West was "grossly negligent," and in Count VIII that Defendant Wolf was

also "grossly negligent." (ECF No. 62 ¶¶ 44-45.) Allegations of intentional misconduct are also not sufficient to extend liability to Defendants acting in their official capacities. *See Kastritis*, 835 F. Supp. 2d at 1225. Plaintiff alleges that Defendant West "intentionally pursued the wrongful conduct," and that Defendant Wolf "chose to ignore the risk." (ECF No. 62 ¶¶ 28, 33.) However, conspicuously absent from Plaintiff's amended complaint are any allegations that the actions taken by Defendants West or Wolf were done in bad faith, or with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property.

Moreover, based on the factual allegations in the amended complaint the Court also cannot reasonably infer that Defendant West's or Defendant Wolf's conduct should be construed as rising to the level of bad faith. With regard to Defendant Wolf, as Defendants note, nothing in Plaintiff's amended complaint suggests that Defendant Wolf is a medical practitioner or that Defendant Wolf had any authority to order the rescheduling of Plaintiff's surgery to be rescheduled. (ECF No. 70 at 16.) Instead, Plaintiff merely asserts that Defendant Wolf is the Senior Health Administrator in custody of the administrative records relating to prisoners' medical care. (ECF No. 62 ¶ 32.) Similarly, nothing suggests that there was a malicious purpose behind any alleged inaction by Defendant Wolf. While Plaintiff states that Defendant Wolf failed to notify her supervisors that Plaintiff's surgery had not taken place, *id.* ¶¶ 32-33, nothing indicates that Plaintiff had a duty to do so. Likewise, although Plaintiff states that Defendant Wolf chose to ignore the associated risk , even intentional misconduct does not rise to the level of bad faith under § 768.28(9)(a).

Turning to Defendant West, nothing is alleged suggesting that there was a

malicious purpose behind Defendant West's alleged failure to follow clearly established policies and procedures. To the extent that Defendant West's actions may constitute intentional or wrongful conduct, such conduct is insufficient to strip West of his sovereign immunity against gross negligence claims. *See Kastritis*, 835 F. Supp. 2d at 1225 (conduct must be "more reprehensible and unacceptable than mere intentional conduct").

In short, under §768.28(9)(a), sovereign immunity shields Defendant West and Defendant Wolf from Plaintiff's gross negligence claims because their conduct does not rise to the level of bad faith. Thus, any alleged negligence by Defendant West and Defendant Wolf' would have to be asserted instead against their employer: the FDOC. Consequently, Counts VII, and VIII of Plaintiff's amended complaint must be dismissed.

The story is somewhat different with respect to Defendant Carrero; Plaintiff has sufficiently alleged a gross negligence cause of action against Defendant Carrero. Like Plaintiff's allegations against Defendants West and Wolf, Plaintiff alleges in Counts V and VI that Defendant Carrero was "grossly negligent." (ECF No. 62 ¶¶ 42-43.) Similarly, Plaintiff alleges that Defendant Carrero "intentionally interfere[d] in the treatment of plaintiff's medical needs," thus constituting "intentional misconduct." (*Id.* ¶ 30.) Likewise, Plaintiff did not allege that the actions taken by Defendant Carrero were done in bad faith, or with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property. Thus, Plaintiff's gross negligence claims against Defendant Carrero appear to be similar to the allegations against Defendants West and Wolf.

There are, however, additional allegations against Defendant Carrero which

arguably rise to the level of bad faith sufficient to strip Defendant Carrero of her sovereign immunity under §768.28(9)(a). For example, Plaintiff alleges that Defendant Carrero "was upset because plaintiff had refused surgery and if plaintiff still wanted it, he would have to start over with the whole procedure, including returning to sick call for 3 visits to see the doctor and paying the medical co-payment for each visit." (*Id.* ¶ 24.) Plaintiff further alleges that Defendant Carrero "refused to reissue the medication [for pain and inflammation] even though there was no change in the original medical diagnosis or condition." (*Id.* ¶ 25.) Plaintiff also alleges that Defendant Carrero "refus[ed] to immediately reschedule plaintiff for surgery once it was determined on his return from Lake Butler Regional Medical Center, that surgery was not performed due to conflict with a legal visit and plaintiff still wanted and needed surgery, and there was no change in plaintiff's medical needs." (*Id.* ¶ 30.)

On a motion to dismiss the Court must accept the Plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. Contrary to Defendants' argument, in this case, Plaintiff's factual allegations regarding Defendant Carrero go well beyond legal conclusions and plausibly suggest to the Court that Defendant Carrero's conduct rises to the level of bad faith or constitutes action carried out with actual malice. Although Plaintiff does not explicitly state that Defendant Carrero acted with malice or bad faith, the Court may infer such from the factual allegations presented. While these allegations may or may not be true, a motion to dismiss is not the proper stage at which to consider such. Therefore, Plaintiff's negligence claims against Defendant Carrero in Counts V and VI, are sufficiently alleged to withstand Defendants' motion to dismiss.

Finally, contrary to Defendant's argument, Plaintiff's claims are not medical

malpractice claims barred by the two-year statute of limitations. Defendants say:

> [t]o the extent that Plaintiff's claims for gross negligence attributable to
> Defendant Carrero in Counts V and VI may be asserted as state-law
> claims against the Florida Department of Corrections under Count IV, the
> claims must be dismissed as they are barred by the two-year statute of
> limitations for medical negligence actions.

(ECF No. 70 at 8.) Plaintiff's claims, however, are not medical negligence claims. As the

district judge previously stated, Plaintiff's "claim is not that the defendants made a

medical error, but that, for reasons unrelated to medical judgment or performance, the

defendants consciously chose not to provide the needed care." (ECF No. 58 at 10-11.)

Plaintiff's response in opposition to Defendants' motion further confirms this conclusion.

(ECF No. 77 at 6.) No where in Plaintiff's amended complaint does he allege medical

negligence. Applying the appropriate statute of limitations for gross negligence under §

768.28(14), Plaintiff properly initiated his claim within four years after his claim

accrued.[7] Consequently, Plaintiff's negligence claims are not barred by the statute of

limitations.

### Injunctive Relief

Plaintiff is not entitled to the injunctive relief he seeks against Defendant FDOC

in his amended complaint. Plaintiff's amended complaint requests "[i]njunctive relief

against the agency, defendant FDOC pro[hibiting] delay in medical treatment of

prisoners under its custody, care, and control." (ECF No. 62 ¶ 49.)[8] However, to the

---

[7] Section 768.28(14) states, "[e]very claim against the state or one of its
agencies or subdivisions for damages for a negligent or wrongful act or omission
pursuant to this section shall be forever barred unless the civil action is commenced by
filing a complaint in the court of appropriate jurisdiction within 4 years after such claim
accrues . . . ."

[8] *See supra* n.5.

extent Plaintiff requests injunctive regarding civil rights violations, Plaintiff does not assert a civil rights violation claim against the FDOC in his amended complaint.

To obtain injunctive relief, a party must show:

(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest.

*Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010). In this case, Plaintiff's demand for injunctive relief is directed to the FDOC, but Plaintiff has not alleged that the FDOC violated any of Plaintiff's rights; instead, Plaintiff alleges only that the FDOC was grossly negligent. Accordingly, Plaintiff cannot prevail in establishing that the FDOC violated his rights.

Additionally, Plaintiff cannot seek relief on behalf of other prisoners because Plaintiff lacks standing to raise claims regarding the violation of other non-party inmates' constitutional rights. *See James v. Adams*, No. 3:09-cv-915-J-34JRK, 2010 WL 51611642, at *8  (M.D. Fla. Dec. 14, 2010) ("Plaintiff's request for injunctive relief on behalf of CM prisoners housed at FSP is improperly before this Court. Plaintiff cannot represent the interests of other inmates; they may initiate their own separate civil rights actions and seek relief."). As defendants correctly note, "this case is not a class action and Plaintiff cannot seek relief on behalf of other prisoners." (ECF No. 70 at 17.) Therefore, Plaintiff's demand for injunctive relief must be dismissed.[9]

In light of the foregoing, it is respectfully **RECOMMENDED** that:

---

[9] To the extent Defendants argue that Fla. Stat. § 766.102(1) does not permit injunctive relief, Defendants' argument is irrelevant because § 766.102(1) relates to medical negligence, and as the Court previously discussed, Plaintiff's negligence claims are not medical negligence or medical malpractice claims.

Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 70, should be **GRANTED** to the extent that Counts VII and VIII should be dismissed for failure to state a claim, and **DENIED** as to the remaining claims.

**IN CHAMBERS** at Gainesville, Florida, this 1st day of October, 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.